UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOPHIA SAVVIDIS,<br><br>     Plaintiff,<br> v.<br><br>RICHARD MCQUAID, TOWN CLERK OF THE CITY OF NORWALK and COUNTRYWIDE HOME LOANS, INC.,<br><br>     Defendants. | Civil Action No.<br>19 Civ. 1308 (CSH)<br><br><br>JANUARY 16, 2020 |

## RULING ON DEFENDANT COUNTRYWIDE HOME LOANS, INC.'S MOTION TO DISMISS

**HAIGHT, Senior United States District Judge:**

*Pro se* Plaintiff Sophia Savvidis ("Plaintiff" or "Savvidis") brings this action, under 42 U.S.C. § 1983, seeking damages and injunctive relief from Richard McQuaid, the Town Clerk of the City of Norwalk ("Defendant McQuaid" or "McQuaid") and Countrywide Home Loans, Inc. ("Defendant CHL" or "CHL"). Doc. 1 ("Compl.").

Plaintiff alleges that Defendant McQuaid violated the Takings Clause of the Fifth Amendment of the United States Constitution by "recording and maintaining false, misleading, and fraudulent records" from third parties in connection with Plaintiff's property located at 106B Comstock Hill Avenue, in Norwalk, Connecticut (the "Property"). Compl. at 1–2 ¶ 1.[1] She also claims that CHL failed to prevent such fraud. *Id.* at 2 ¶ 5.

---

[1] Plaintiff brought suit pursuant to 42 U.S.C. § 1983 to vindicate alleged Fifth Amendment violations. "Section 1983 does not itself confer substantive rights on a plaintiff, but is instead the means by which an injured party may seek vindication." *Youngs v. Fusaro*, 179 F. Supp. 3d 198, 204 (D. Conn. 2016). The statute provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

CHL has moved to dismiss Plaintiff's Complaint. Doc. 17 ("Mot. to Dismiss"); Doc. 17-1 ("Def.'s Mem."). Plaintiff has not filed any opposition.[2] This Ruling resolves CHL's motion.

## I. BACKGROUND

The facts herein are taken from Plaintiff's Complaint and CHL's Brief.[3] On April 14, 2003, non-parties Athina Savvidis and Anastasios Savvidis executed a note ("Note") in favor of Americas Wholesale Lender ("AWL") in exchange for a loan in the principal amount of $550,000.00 (the "Loan"). Doc. 17-2 ("Exhibit A"). As security for the Note, on April 14, 2003, non-parties Athina Savvidis and Anastasios Savvidis granted a mortgage on the Property to AWL and its successors and assigns (the "Mortgage"). Doc. 17-3 ("Exhibit B"). On April 25, 2003, AWL assigned the Mortgage to the Bank of New York as Trustee ("BONY"). Doc. 17-4 ("Exhibit C").

On December 19, 2005, Athina Savvidis executed a quitclaim deed which purported to deed the Property to Athina Savvidis, Anastasios Savvidis, and Plaintiff collectively. Doc. 17-6

---

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

[2] CHL certified that it served upon Plaintiff a "Notice to Pro Se Litigant Opposing Motion to Dismiss as Required by Local Rule 12(a)," along with the relevant motion papers. Doc. 18. That notice provides, in relevant part: "The Defendants' motion may be granted and your claims may be dismissed without further notice if you do not file opposition papers as required by Rule 12 of the Federal Rules of Civil Procedure and if the Defendant's motion shows that the Defendants are entitled to dismissal of any or all of your claims. Copies of relevant rules are attached to this notice, and you should review them very carefully." D. Conn. L. Civ. R. 12(a) (emphasis omitted). Plaintiff has not filed any opposition papers to Defendant's Motion to Dismiss. However, Plaintiff is a *pro se* litigant and therefore the Court will construe her pleadings "liberally." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

[3] As noted below, because CHL challenges the Court's subject matter jurisdiction, the Court need not accept all of Plaintiff's allegations as true (for purposes of resolving that challenge). Additionally, the Parties are permitted to use affidavits and other materials beyond the pleadings in support or in opposition to a challenge to subject matter jurisdiction. *See infra* Section II.

("Exhibit E"). According to CHL—and Plaintiff does not appear to dispute this—Plaintiff did not hold any ownership or other interest in the Property until the date of the quitclaim deed. Def.'s Mem. at 7.

Sometime thereafter, Athina and Anastasios Savvidis defaulted on their loan repayment obligations and failed to cure the default. *Id.* As a result, on September 26, 2006, BONY, as mortgagee of record, commenced a foreclosure action against them in the Superior Court for the Judicial District of Stamford, captioned *Bank Of New York as trustee for the Certificateholders v. Savvidis et al.*, FST-CV06-6000164-S (Conn. Super. Ct. 2006). *Id.* BONY also listed Plaintiff as a Defendant in that lawsuit. *Id.*

On March 26, 2007, the Superior Court defaulted all defendants for failing to plead. *Id.* On that same date, the trial court granted BONY's motion for judgment of foreclosure by sale and set a sale date of June 2, 2007. *Id.* No defendant appealed that judgment. *Id.* Nonetheless, the sale did not occur. *Id.* at 7–8. Rather, it appears that for almost thirteen years, the Parties have engaged, and continue to engage, in various motion practice in state court in connection with the foreclosure of the Property. *Id.* at 8.

Plaintiff filed the instant lawsuit on July 23, 2019.[4] Plaintiff alleges that Defendant McQuaid has been "recording and maintaining false, misleading, and fraudulent records" from third parties in connection with Plaintiff's Property. Compl. at 2 ¶ 1. According to Plaintiff, McQuaid's actions are hindering her from financing and selling her property. *Id.* at 2 ¶ 2.

---

[4] Plaintiff originally filed this lawsuit in the Southern District of New York. Judge Paul A. Engelmayer, who was assigned to the case, entered an Order to Show Cause directing Plaintiff to address whether the case should be transferred to this District, because her Complaint "ma[de] clear that the subject property is located in Connecticut, where both plaintiff and McQuaid reside." Doc. 4 ("Order to Show Cause"). Plaintiff failed to respond to Judge Engelmayer's Order, and the case was transferred to this Court. Doc. 5 ("Order of Transfer").

3

According to Plaintiff, furthermore, sometime after CHL offered her family a loan in April 2003, the title to the loan was transferred, though that transfer "failed *ab initio*"—that is, from the beginning. *Id.* at 2 ¶ 3. Thereafter, false claimants to the loan "emerged" but allegedly lacked proof of the debt. *Id.* at 2 ¶ 4. Therefore, the false claimants made false statements under oath in an attempt to transfer the loan to third parties. *Id.* According to Plaintiff, CHL failed to prevent or stop the fraudulent activity. *Id.* at 2 ¶ 5. Meanwhile, according to Plaintiff, unknown parties have now recorded their own deed to Plaintiff's property. *Id.* at 3 ¶ 7.

Plaintiff seeks damages from Defendants for the harm done to her and an injunction directing McQuaid to remove the fraudulent records from the City's rolls. *Id.* at 3 ¶¶ 8–9.

Pending before this Court is CHL's Motion to Dismiss. Defendant makes a number of arguments: (1) that the court lacks personal jurisdiction over CHL; (2) that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, or, in the alternative, that the Court should decline to exercise jurisdiction over this matter in accordance with the *Colorado River* and *Younger* abstention doctrines; (3) that res judicata bars Plaintiff's claims; (4) that Plaintiff's claims are time-barred as a matter of law; and (5) that Plaintiff's claims fail as a matter of law. For the reasons stated below, the Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine; and, therefore, Plaintiff's Complaint must be dismissed.

## II. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1), under which a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). When addressing a challenge to subject matter jurisdiction under Rule 12(b)(1), a court may look beyond the pleadings and accept any evidence. Indeed, both the

4

moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support or in opposition to a challenge to subject matter jurisdiction" and the "district court also may inquire, by affidavits or otherwise, into the facts as they exist." *Tuccio Development, Inc. v. Town of Ridgefield*, No. 06 Civ. 1821, 2008 WL 749855 at *1 (D. Conn. March 19, 2008) (quoting *Matos v. United States Dept. of Housing & Urban Development*, 995 F. Supp. 48, 49 (D. Conn. 1997) and *Land v. Dollar*, 330 U.S. 731, 735 (1947)) (internal quotation marks omitted).

Parties asserting that subject matter jurisdiction exists—here, Plaintiff—bear the burden of proving it by a preponderance of the evidence; all ambiguities and inferences will be drawn in their favor. *See Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The overarching function of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof" and, accordingly, the "issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *Bici v. Napolitano*, No. 10 Civ. 1991, 2012 WL 642781 at *1 (D. Conn. Feb. 28, 2012) (emphasis added) (internal quotation marks omitted) (quoting *Mytych v. May Dept. Stores Co.*, 34 F. Supp.2d 130, 131 (D. Conn. 1999) and *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D. Conn. 1990)).

A motion to dismiss for a failure to state a claim upon which relief may be granted is brought under Fed. R. Civ. P. 12(b)(6). Such a motion must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken." *Lunardini v. Massachusetts Mut. Life Ins. Co.*, 696 F. Supp.2d 149, 155 (D. Conn. 2010) (citing *Leonard F. v. Israel Disc.*

*Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) and *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). A court's focus on a motion to dismiss under Rule 12(b)(6) is therefore "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). For this reason, when "deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Moore v. Mara*, No. 08 Civ. 1946, 2010 WL 3270223 at *3 (D. Conn. August 17, 2010). However, while a complaint need not contain detailed factual allegations to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will not suffice if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Thus, a plaintiff must do more than provide labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (in reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

### III. DISCUSSION

Courts generally address challenges to a court's subject matter jurisdiction prior to addressing other challenges. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter."); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993) (noting that a "court should consider [a] Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined"). For these reasons, the Court first turns to CHL's challenge to the Court's subject matter jurisdiction.

#### A. The *Rooker-Feldman* Doctrine

Plaintiff claims that Defendant McQuaid has been "recording and maintain false, misleading, and fraudulent documents assisting forgers and perpetrators in attempting to steal and enrich themselves on the Plaintiff's property with said documents and a forged deed." Compl. at 4 ¶ 28. CHL, on the other hand, argues that this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Def.'s Mem. at 7–9.

"A challenge under the *Rooker-Feldman* doctrine is a challenge for lack of subject matter jurisdiction." *Lewis v. Guardian Loan Co.*, No. 19 Civ. 704 (CSH), 2019 WL 3938150, at *1 (D.

Conn. Aug. 20, 2019) (citing *Gentner v. Shulman*, 55 F.3d 87, 88–89 (2d Cir. 1995)). The doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Grim v. Baker*, 553 Fed. Appx. 84, 85 (2d Cir. 2014) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983) (holding that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–16 (1923) ("[N]o court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors."). "The Supreme Court has clarified that the doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Grim*, 553 Fed. Appx. at 85 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (internal quotation marks omitted).

As the Second Circuit has articulated, "*Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown,* 626 F.3d 143, 154 (2d Cir. 2010). Moreover, "the applicability of the *Rooker-Feldman* doctrine turns not on the similarity between a party's state-court and federal-court claims . . . but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown,* 481 F.3d 89, 97–98 (2d Cir. 2007), *cert. denied*, 552 U.S. 1179 (2008).

Defendant CHL argues that all four of the *Rooker-Feldman* factors are present in this case. Def.'s Mem. at 13–14. The Court agrees. First, Plaintiff lost in the foreclosure action in the

Connecticut Superior Court and strict foreclosure was entered against her.[5] Second, Plaintiff appears to be alleging, among other injuries, harm caused by the Connecticut court's adjudication in the foreclosure action because her claims relate to allegations that challenge the mortgage on the Property and the assignments of that mortgage.[6] Third, the judgment of strict foreclosure entered in state court on March 26, 2007, predates this action. Fourth, the plaintiff appears to invite this Court to review the state court judgment. For example, she states that "[t]he bars . . . against the federal courts meddling in State court affairs . . . has now been removed," and that Connecticut courts "ha[ve] proven inadequate to deal with the problems resulting from flawed record keeping." Compl. at 6 ¶¶ 3–4. Indeed, allowing Plaintiff to proceed with this action would require the Court to re-adjudicate issues already litigated and resolved in Connecticut Superior Court—for example, whether the Note and Mortgage are valid and enforceable, whether non-parties Athina and Anastasios Savvidis defaulted, and whether the Bank has standing to foreclose and is entitled to judgment of strict foreclosure (which would provide insight with respect to the

---

[5] Public records reflect that in *Bank Of New York as trustee for the Certificateholders v. Savvidis et al.*, FST-CV06-6000164-S, a motion for a judgment of strict foreclosure was filed on January 10, 2007 (Doc. 104.00); a motion for judgment of foreclosure by sale was filed on January 16, 2007 (Doc. 109.00); and a motion for default was filed on March 5, 2007 (Doc. 111.00) and granted by Judge Taggart Adams on March 26, 2007.

[6] Although Plaintiff's Complaint does not overtly state that she has been injured by the Connecticut court's adjudication in the foreclosure action, her allegations say so by implication. For example, Plaintiff states that "[f]alse claimaints to said loan ha[ve] since emerged but ha[ve] admitted to not having a proof of debt and also *making false statements under oath*, in an attempt to transfer the claimed loan to third parties." Compl. at 2 ¶ 4 (emphasis added). When she states that "[t]he bars . . . against the federal courts meddling in State court affairs . . . has now been removed." *Id.* at 6 ¶ 3. Or, when Plaintiff argues that Connecticut courts "ha[ve] proven inadequate to deal with the problems resulting from flawed record keeping." *Id.* ¶ 4.

validity of the state court judgment, and, in turn, the propriety of Plaintiff's allegations regarding false recordkeeping).[7]

Upon review of the record in this case, the *Rooker-Feldman* doctrine bars Plaintiff's action in this Court. Accordingly, this Court lacks subject matter jurisdiction to resolve Plaintiff's requests for relief. The Court must dismiss Plaintiff's action in total. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[8]

---

[7] Stated another way, Plaintiff's claims are "inextricably intertwined" with a state court judgment such that her federal claim would succeed only if the state court wrongly decided the issue. *See Gonzalez*, 74 F. Supp. 3d at 515. "In the *Rooker–Feldman* doctrine, the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Weiss v. Weiss,* 375 F. Supp. 2d 10, 18 (D. Conn. 2005) (citation and internal quotation marks omitted). "[A] federal claim is 'inextricably intertwined' with the state-court judgment if the relief sought may be granted only on the federal court's finding that the state court determined the issues before it erroneously." *Id*. (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25 (1987) (plurality opinion)). In the present case, Plaintiff claims that Defendant McQuaid has been "recording and maintaining false, misleading, and fraudulent records" from third parties in connection with the Property. Compl. at 2 ¶ 1. The truth or falsity of the records depends on the result of the state foreclosure proceedings. If the state court rightfully entered a judgment of foreclosure, then presumably Defendant McQuaid has recorded and maintained accurate records regarding the Property (and vice versa). But it is not this Court's role to undertake such an analysis. That inquiry is "inextricably intertwined" with the state proceeding. *Weiss*, 375 F. Supp. 2d at 18. Therefore, Plaintiff's claims against McQuaid are barred *Rooker-Feldman*.

[8] Construing Plaintiff's Complaint liberally, to the extent she is arguing that the judgment in the foreclosure proceeding was procured by fraud, *see, e.g.*, Compl. at 2 ¶ 4 (alleging that "false claimants . . . [have] ma[de] false statements under oath"), the conclusory statement would not provide grounds to escape *Rooker-Feldman*. The Second Circuit has held that "[w]here a party asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [that party's] claim." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). Moreover, "[i]n the particular context of state court judgments of foreclosure, '[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Gonzalez*, 74 F. Supp. 3d at 514 (quoting *Gunn v. Ambac Assur. Corp.*, No. 11 Civ. 5497 (PAC) (JLC), 2012 WL 2401649, at *12 (S.D.N.Y. June 26, 2012)).

**B.     Claim Preclusion**

To the extent that Plaintiff is alleging injury stemming from the same transaction but not directly caused by the foreclosure judgment—for example, that McQuaid had been recording false and misleading documents preceding the foreclosure—these claims, like all of Plaintiff's claims, for that matter, would still be subject to dismissal on the ground of claim preclusion. *See Gonzalez*, 632 F. App'x at 34; *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107–08 (2d Cir. 2015) ("Under claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. The doctrine precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not.") (emphasis in original; citations and internal quotation marks omitted); *O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (stating that, under Connecticut law, "[c]laim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made" (internal quotation marks omitted)).  As CHL argues, Plaintiff alleges an illegal taking of her property by "recording and maintaining false, misleading and fraudulent records" and that the "recording originated in or about April 14, 2003." Compl. at 2 ¶¶ 1, 3.  To the extent Plaintiff challenges the validity of the Mortgage, or any of its subsequent assignments, she could have raised such arguments in the state foreclosure action.  Indeed, Plaintiff had a full and fair opportunity to litigate her claims in *Bank Of New York as trustee for the Certificateholders v. Savvidis et al.*, FST-CV06-6000164-S (Conn. Super. Ct. 2006). *See, e.g.*, *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 22 (2d Cir. 2016) (affirming the dismissal of a claim of alleged mortgage fraud on res judicata grounds because the plaintiff "had

the opportunity to litigate that claim in her prior state court action"). Therefore, to the extent the claims are not barred by *Rooker-Feldman*, they must nevertheless be dismissed as precluded.[9]

## IV. CONCLUSION

Plaintiff's Complaint is DISMISSED. Nonetheless, the Court recognizes that "[a] *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint. In essence, a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984); *see also Harvey v. Town of Greenwich*, No. 17 Civ. 1417 (SRU), 2019 WL 1440385, at *10 (D. Conn. Mar. 31, 2019) ("[T]he rule provides that '[t]he court should freely give leave when justice so requires.' Courts are especially lenient with *pro se* plaintiffs, who are freely granted the opportunity to amend." (quoting Fed. R. Civ. P. 15(a)(2); citation and quotation marks omitted).

---

[9] Because the Court lacks subject matter jurisdiction to preside over this case, the Court need not analyze Defendant's other arguments in support of dismissing Plaintiff's Complaint (*e.g.*, that Plaintiff's claims are time-barred as a matter of law or that her Complaint fails to state a plausible claim for relief). *See Gonzalez*, 74 F. Supp. 3d at 518 ("In the absence of subject matter jurisdiction, the Court need not decide whether the Complaint states any viable claims." (citation omitted)); *Guy v. Moynihan*, No. 17 Civ. 14 (SRU), 2017 WL 2661620, at *2 (D. Conn. June 20, 2017) ("Because I conclude that the *Rooker-Feldman* doctrine is sufficient to dispose of Guy's case in its entirety, I will address only that basis for dismissal."). However, the Court agrees with CHL that Plaintiff's claim against CHL should be dismissed for the additional reason that CHL is not a state actor. Def.'s Mem. at 19. "A plaintiff must establish that 'a person acting under color of state law deprived him of a federal right' to succeed on a § 1983 claim." *Youngs*, 179 F. Supp. 3d at 204 (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Accepting all of Plaintiff's allegations as true, as the Court must in the context of this inquiry, Plaintiff has failed to make any allegations that CHL is a state actor for purposes of a section 1983 claim, or that CHL's actions, as a private party, constitute state action under section 1983. *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 142 (D. Conn. 2018) (discussing the elements of a section 1983 claim, as well as the "three broad tests to determine whether a private party's actions constitute state action under § 1983").

Plaintiff is a *pro se* litigant and she was unable to amend her Complaint earlier. Doc. 14 (denying Plaintiff's Motion for Extension of Time to File Amended Complaint because Plaintiff failed to comply with the District's local rules). Accordingly, Plaintiff will be permitted to file an Amended Complaint by **February 21, 2020**. If Plaintiff fails to do so, the Clerk will be directed to terminate any pending motions and close the case.

It is SO ORDERED.

Dated: New Haven, Connecticut
January 16, 2020

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge