## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SOPHIA SAVVIDIS,

               Plaintiff,

   v.

RICHARD McQUAID, TOWN CLERK FOR
THE CITY OF NORWALK, and
COUNTRYWIDE HOME LOANS, INC.,

           Defendants.

Civil Action No. 3:19-cv-1308 (CSH)

**APRIL 13, 2021**

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

**HAIGHT, Senior District Judge:**

*Pro se* Plaintiff Sophia Savvidis ("Plaintiff" or "Savvidis") brings this action, under 42 U.S.C. § 1983 ("section 1983"), seeking damages and injunctive relief from Richard McQuaid, the Town Clerk of the City of Norwalk ("Defendant McQuaid" or "McQuaid") and Countrywide Home Loans, Inc. ("Defendant CHL" or "CHL," and collectively with McQuaid, "Defendants"). Doc. 1 ("Compl.").

Previously, CHL filed a motion to dismiss Plaintiff's Complaint. Doc. 17. The Court granted that motion because it concluded that it lacked subject matter jurisdiction over Plaintiff's claims. *See Savvidis v. McQuaid*, No. 19 Civ. 1308 (CSH), 2020 WL 249027, at *6 (D. Conn. Jan. 16, 2020) ("*Savvidis I*"). Specifically, the Court determined that "the *Rooker-Feldman* doctrine bars Plaintiff's action in this Court," and that, "to the extent the claims are not barred by *Rooker-Feldman*, they must nevertheless be dismissed" on the ground of claim preclusion. *Id.* Nonetheless, the Court permitted Plaintiff to amend her Complaint to cure its deficiencies because the Court recognized that "a *pro se* litigant should be afforded every reasonable opportunity to

demonstrate that he [or she] has a valid claim." *Id.* at *7 (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)) (internal quotation marks omitted).

Plaintiff then filed an Amended Complaint. Doc. 21 ("Am. Compl."). Plaintiff's allegations regarding Defendants are similar to her original Complaint: that McQuaid violated the Takings Clause of the Fifth Amendment of the United States Constitution by "recording and maintaining false, misleading, and fraudulent records" from third parties in connection with Plaintiff's property located at 106B Comstock Hill Avenue, in Norwalk, Connecticut. Am. Compl. at 1–2 ¶ 1. She also claims that CHL failed to prevent such fraud. *See id.* at 8 ¶ 20.

McQuaid has moved to dismiss Plaintiff's Amended Complaint. Doc. 24 ("McQuaid's Mot."); Doc. 24-2 ("McQuaid's Mem."). CHL also has so moved. Doc. 25 ("CHL's Mot."); Doc. 25-1 ("CHL's Mem."). Plaintiff has not filed any opposition to Defendants' motions.[1] This Ruling resolves those motions.

## I.   BACKGROUND

### A.   Underlying Mortgage

The facts herein are taken from Plaintiff's Amended Complaint and Defendants' Briefs.[2] The Savvidis family, of which Plaintiff Sophia Savvidis is a member, operates one of the largest

---

[1] Defendants have certified that they served upon Plaintiff a "Notice to *Pro Se* Litigant Opposing Motion to Dismiss as Required by Local Rule 12(a)." Docs. 24-1, 26. That notice provides that, "Defendant's motion may be granted and your claims may be dismissed without further notice if you do not file opposition papers as required by Rule 12 of the Federal Rules of Civil Procedure and if the Defendant's motion shows that the Defendant is entitled to dismissal of any or all of your claims. Copies of relevant rules are attached to this notice, and you should review them very carefully." D. Conn. L. Civ. R. 12(a) (emphasis omitted). However, as the Court explained in *Savvidis I*, Plaintiff is a *pro se* litigant and therefore the Court will construe her pleadings "liberally." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). The Court notes that Plaintiff did not file any papers in opposition to CHL's previous motion to dismiss.

[2] As noted *infra*, because Defendants challenge the Court's subject matter jurisdiction, the Court need not accept all of Plaintiff's allegations as true, for purposes of resolving that challenge. The Parties are permitted to use affidavits

diners in Connecticut, located off of the Interstate 95 in Norwalk.   Am. Compl. at 2 ¶ 2.   Three of Plaintiff's relatives—Andreas, Alexandros, and Anastasios Savvidis—inherited the diner from their father.   *Id.* at 2 ¶ 3.   It also appears that they inherited three properties that are next to one another: 106A, 106B, and 106C Comstock Hill Avenue, *id.*, which at one point had been one undivided property, *id.* at 5 ¶ 13.   The only property at issue in the current lawsuit is 106B Comstock Hill Avenue (the "Property"), which belongs to Plaintiff.   *Id.* at 1–2 ¶ 1.

On April 14, 2003, non-parties Athina Savvidis and Anastasios Savvidis executed a note ("Note") in favor of America's Wholesale Lender ("AWL") in exchange for a loan in the principal amount of $550,000.00 (the "Loan").   Doc. 25-2.   As security for the Note, on April 14, 2003, non-parties Athina Savvidis and Anastasios Savvidis granted a mortgage on the Property to AWL and its successors and assigns (the "Mortgage").   Doc. 25-3.   On April 25, 2003, AWL assigned the Mortgage to the Bank of New York as Trustee ("BONY").   Doc. 25-4.

On December 19, 2005, Athina Savvidis executed a quitclaim deed purporting to deed the Property to Athina Savvidis, Anastasios Savvidis, and Plaintiff, collectively.   Doc. 25-6. According to CHL—and Plaintiff does not appear to dispute this—Plaintiff did not hold any ownership or other interest in the Property until the date of this deed.   CHL's Mem. at 3.

**B.     State Court Foreclosure Action**

Sometime thereafter, Athina and Anastasios Savvidis defaulted on their loan repayment obligations and failed to cure the default.   *Id.* As a result, on September 26, 2006, BONY, as mortgagee of record, commenced a foreclosure action against them in the Connecticut Superior Court for the Judicial District of Stamford, captioned *Bank of New York as trustee for the*

---

and other materials beyond the pleadings in support or in opposition to a challenge to subject matter jurisdiction. *See infra* Section II.

*Certificateholders v. Savvidis et al.*, FST-CV06-6000164-S (Conn. Super. Ct. 2006). *Id.*; *see also* Doc. 25-7 ("State Court Docket"). BONY also listed Plaintiff as a defendant in that lawsuit. State Court Docket at 1.

On March 26, 2007, the Superior Court defaulted all defendants for failing to plead. CHL's Mem. at 3. On that same date, the trial court granted BONY's motion for judgment of foreclosure by sale and set a sale date of June 2, 2007. *Id.* No defendant appealed that judgment. *Id.* However, the sale did not occur. *Id.* Rather, it appears that for almost thirteen years, the Parties have engaged, and continue to engage, in various motion practice in state court in connection with the foreclosure of the Property, including the filing of petitions for bankruptcy protection, motions to open the foreclosure judgment and extend the sale date, and multiple appeals to the Connecticut Appellate Court and the Connecticut Supreme Court. *Id.* at 3–4.

Meanwhile, CHL (or its successor Bank of America, N.A.) was the mortgage loan servicer until January 1, 2014. *Id.* at 4. At that point, the servicing of the loan was transferred to Nationstar Mortgage LLC. *Id.* Anastasios and Athina Savvidis were informed of that transfer. Doc. 25-9.

The Parties in the state court action continued to engage in motion practice, but on June 24, 2019, the Superior Court issued an order of ejectment. *See* State Court Docket at 9. Shortly thereafter, Plaintiff filed another appeal regarding the foreclosure action, and on July 24, 2019, the Connecticut Appellate Court dismissed that appeal as frivolous:

> The appeal is dismissed as frivolous and . . . Sophia Savvidis, is prohibited from filing any further appeals from any decision in docket number FST-CV06-6000164-S, unless she first files a motion for permission to appeal with the Appellate Court. . . . The Appellate Court Clerk is directed not to accept and to return any filings in violation of this order.

Doc. 25-8.

C.     **The Instant Lawsuit**

1.     **Allegations Regarding the Mortgage**

Plaintiff filed the instant lawsuit on July 23, 2019, and she has a different account of the events that have transpired in connection with her Property.   Plaintiff claims that her Property has been "attacked by [a] foreclosure attempt by . . . third party junk collectors."   *Id.* at 2 ¶ 2.

According to Plaintiff, the Savvidis family has paid hundreds of thousands of dollars on their mortgage over the years, after Andreas Savvidis entered into a loan modification with a bank. *Id.* at 3 ¶ 5; *id.* at 5 ¶ 13.   The Savvidis family has now learned from various disclosures, however, that the parties to whom the family has been making payments were not actually entitled to those payments.   *Id.* at 3 ¶ 5.   Rather, there are "junk debt collectors" who have claimed that "neither . . . Andreas Savvidis nor the party he made a modification with, had any right to speak for the property," and Plaintiff alleges that the junk debt collectors found a title error stemming from when the Comstock Hill property was originally divided into three parcels—A, B, and C.   *Id.* at 5 ¶ 13.

Plaintiff also claims that the junk debt collectors are relying on records that are erroneous and were supposed to be removed by October 12, 2012, under the National Mortgage Settlement. *Id.* at 3 ¶ 6.[3]   However, those records were not removed "and [are] the reason for the instant lawsuit."   *Id.*   According to Plaintiff, as part of that agreement, the debt on the Property was paid off.   *Id.* at 3 ¶ 7.   Accordingly, a debt collector cannot now "double dip and try to collect the same

---

[3] According to the Department of Justice, "[o]n February 9, 2012, the Attorney General announced that the federal government and 49 states had reached a settlement agreement with the nation's five largest mortgage servicers to address mortgage servicing, foreclosure, and bankruptcy abuses (the "National Mortgage Settlement"). . . . The National Mortgage Settlement settled certain state and federal investigations relating to mortgage servicing abuses including abuses in the bankruptcy process and provided for over $20 billion in direct consumer relief."  U.S. Dep't of Justice, National Mortgage Servicer Settlements, https://www.justice.gov/ust/national-mortgage-settlements (last accessed April 13, 2021).

amount again." *Id.*   Yet, Plaintiff claims that the junk debt collector has now emptied out the Property and is actively trying to sell it.   *Id.* at 4 ¶ 10.

## 2.   Defendants' Actions

Plaintiff alleges that Defendant McQuaid has been "recording and maintaining false, misleading, and fraudulent records from third parties" in connection with Plaintiff's Property.   *Id.* at 1–2 ¶ 1.

Plaintiff further claims that McQuaid's actions of making false recordings are hindering her from financing and selling her Property.   *Id.* at 7 ¶ 17.   According to Plaintiff, at some time after CHL offered her family a loan in April 2003, the title to the loan was transferred, though that transfer failed "*ab initio*"—*i.e.*, from the beginning.   *Id.* at 7 ¶ 18.   Thereafter, false claimants to the loan "emerged" but allegedly lacked proof of the debt.   *Id.* at 8 ¶ 19.   The false claimants made untruthful statements under oath in an attempt to transfer the loan to third parties.   *Id.* According to Plaintiff, CHL failed to prevent or stop the fraudulent activity.   *Id.* at 8 ¶ 20. Meanwhile, according to Plaintiff, unknown parties have now recorded their own deed to Plaintiff's Property.   *Id.* at 8 ¶ 22.

Plaintiff seeks damages from Defendants for the harm done to her and an injunction directing McQuaid to remove the fraudulent records from the City's rolls.   *Id.* at 8–9 ¶¶ 23–24.

## II.   STANDARD OF REVIEW

As the Court explained in *Savvidis I*, a motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1), under which a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case."   *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).   When addressing a

challenge to subject matter jurisdiction under Rule 12(b)(1), a court may look beyond the pleadings and accept any evidence.   Indeed, both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support or in opposition to a challenge to subject matter jurisdiction" and the "district court also may inquire, by affidavits or otherwise, into the facts as they exist." *Tuccio Dev., Inc. v. Town of Ridgefield*, No. 06 Civ. 1821, 2008 WL 749855, at *1 (D. Conn. March 19, 2008) (quoting *Matos v. U.S. Dep't of Housing & Urban Dev.*, 995 F. Supp. 48, 49 (D. Conn. 1997) and *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).

"[A] plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence," and the Court must construe all ambiguities and draw all inferences in the plaintiff's favor. *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).   The overarching function of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof," and accordingly the "issue on a [Rule 12(b)(1)] motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his [or her] claims." *Bici v. Napolitano*, No. 10 Civ. 1991, 2012 WL 642781, at *1 (D. Conn. Feb. 28, 2012) (quoting *Mytych v. May Dep't Stores Co.*, 34 F. Supp. 2d 130, 131 (D. Conn. 1999) and *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D. Conn. 1990)) (internal quotation marks omitted).

A motion to dismiss for a failure to state a claim upon which relief may be granted is brought under Fed. Civ. P. 12(b)(6).   Such a motion must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Lunardini v. Mass. Mut. Life Ins. Co.*, 696 F. Supp. 2d 149, 155 (D. Conn. 2010) (citing *Leonard F. v. Israel Disc. Bank of*

*N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) and *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  A court's focus on a motion to dismiss under Rule 12(b)(6) is therefore "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).  For this reason, when "deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Moore v. Mara*, No. 08 Civ. 1946, 2010 WL 3270223, at *3 (D. Conn. August 17, 2010).

However, while a complaint need not contain detailed factual allegations to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will not suffice if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Thus, a plaintiff must do more than provide labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

With respect to *pro se* litigants, it is well-established that their "submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).   Nor may a court "invent factual allegations that [the plaintiff] has not pled." *Id.*

### III.   DISCUSSION

Plaintiff has brought suit pursuant to section 1983 to vindicate alleged Fifth Amendment violations.   Defendants make a number of arguments in support of their motions to dismiss: (1) that the court lacks personal jurisdiction over Defendants; (2) that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (3) in the alternative, that the Court should decline to exercise jurisdiction in accordance with the *Colorado River* and *Younger* abstention doctrines; (4) that *res judicata* bars Plaintiff's claim; (5) that Plaintiff's claim is time-barred; and (6) that Plaintiff's claim fails as a matter of law.   *See generally* CHL's Mem.; McQuaid's Mem.

### A.    The *Rooker-Feldman* Doctrine

As I previously have explained in *Savvidis I* and other cases, "[a] challenge under the *Rooker-Feldman* doctrine is a challenge for lack of subject matter jurisdiction."   *Lewis v. Guardian Loan Co.*, No. 19 Civ. 704 (CSH), 2019 WL 3938150, at *1 (D. Conn. Aug. 20, 2019) (citing *Gentner v. Shulman*, 55 F.3d 87, 88–89 (2d Cir. 1995)).   The doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts.   *Grim v. Baker*, 553 F. App'x. 84, 85 (2d Cir. 2014) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983)); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–16 (1923) ("[N]o court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors.").   "The Supreme Court has clarified that the doctrine is confined to cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Grim*, 553 F. App'x. at 85 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (internal quotation marks omitted).

According to the Second Circuit, "*Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010); *see also Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The applicability of the doctrine "turns not on the *similarity* between a party's state-court and federal-court claims," but rather "on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007), *cert. denied*, 552 U.S. 1179 (2008).

Defendants argue that all four of the *Rooker-Feldman* factors are present in this case. CHL's Mem. at 10; McQuaid's Mem. at 10–11. The Court agrees.

Turning to the first factor, Plaintiff lost in the foreclosure action in the Connecticut Superior Court and strict foreclosure was entered against her. *See* State Court Docket at 3. Plaintiff repeatedly appealed that judgment and other decisions in that lawsuit; and, the Connecticut Appellate Court dismissed her most recent appeal as frivolous. *See id.* at 9; *see also* Doc. 25-8.

With respect to the second factor, Defendants argue that Plaintiff's Amended Complaint "relates to Plaintiff's challenge to the Foreclosure Judgment, vis-à-vis a challenge to the Note and Mortgage." McQuaid's Mem. at 10–11; CHL's Mem. at 10. As an initial matter, Defendants

misstate the standard: the inquiry is not whether Plaintiff's claim *relates to* a state court judgment, but whether Plaintiff complains of injuries *caused by* a state court judgment. *See McKithen*, 481 F.3d at 97–98. The Court will focus on this latter inquiry.

Plaintiff appears to allege harm caused by the Connecticut court's adjudication of the foreclosure action. For example, Plaintiff claims that she did not receive "a fair chance to litigate the foreclosures in the Connecticut state court," Am. Compl. at 2 ¶ 4, and that "the decision by the State Court ignor[ed] [her] family's claim," *id.* at 4 ¶ 9. Plaintiff further claims that the state court's actions "violate[d] [her] right to due process under . . . 42 U.S.C. § 1983." *Id.* at 6 ¶ 15.

At the same time, however, Plaintiff appears to argue that she is not, in fact, complaining of an injury caused by a state court judgment. *Id.* Rather, Plaintiff asserts that the injury occurred *prior to* the state court's foreclosure action, when there was a "title error on all the Comstock Hill properties." *Id.* In support of that argument, Plaintiff cites to *Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) for the proposition that *Rooker-Feldman* does not apply when "the harm was done prior to the State court's involvement." *Id.*

The Second Circuit in *Sung Cho* did reiterate that, for purposes of the second prong of *Rooker-Feldman*, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 646 (emphasis added). *Sung Cho* focused on a New York City ordinance that permitted the city to close a residence or business for up to a year if it could show that certain illegal activities that were detrimental to city residents' health and safety were occurring on the premises. *See id.* at 642. According to the plaintiffs, city police officers were participating in a "lumbering and indiscriminate law enforcement program," where they were serving notices of evictions on

individuals and businesses—sometimes months after any criminal activity had taken place—and compelling them to enter into coercive settlement agreements waiving constitutional rights. *Id.* at 642–43, 646. According to the plaintiffs, the agreements violated the Fourteenth Amendment. *See id.* at 646.

One of the primary disputes in *Sung Cho* was whether the state courts' so-ordering of the allegedly coercive settlement agreements produced harm sufficient to satisfy the second prong of the *Rooker-Feldman* doctrine. The plaintiffs claimed that "their complaint [was] about the *agreements themselves* and the conduct that led to them—not the judgments so-ordered by the state court." *Id.* (emphasis in original). The city argued, on the other hand, that *Rooker-Feldman* barred the plaintiffs' claim because they were seeking to relitigate so-ordered judgments in state courts lawsuits. *See id.* The Second Circuit agreed with the plaintiffs, concluding that when "plaintiffs bring claims alleging harm flowing from wrongful conduct leading to settlement terms and do not argue that the state courts committed any error in so-ordering the parties' agreements, the complaint attacks the conduct itself, and the claim does not function as a *de facto* appeal." *Id.* at 647.

Turning to the case at bar, and construing Plaintiff's Amended Complaint liberally, Plaintiff appears to be arguing that the real harm in this case occurred when McQuaid recorded and maintained false, misleading, and fraudulent records from third parties, and when a title error occurred. Am. Compl. at 1–2 ¶ 1; *id.* at 6 ¶ 15. Under this theory, the state court was merely ratifying existing violations of Plaintiff's constitutional rights when it entered a judgment of foreclosure. Defendants do not respond to this argument in their Briefs.

As an initial matter, Plaintiff's argument is not entirely persuasive because it is not clear that *Sung Cho* applies outside of the context of pre-judicial settlement agreements. *See, e.g.,*

*Skipp v. Murphy*, No. 17 Civ. 1974 (VAB), 2019 WL 3231773, at *3 (D. Conn. July 18, 2019) ("[The plaintiff] does not allege that a city agent coerced her into a pre-judicial settlement agreement. . . . *Sung Cho* therefore is inapplicable to [her] case.").

However, even if it did, the case at bar is readily distinguishable. In *Sung Cho*, the plaintiffs only attacked the underlying conduct that led to the settlement agreements—the city police officers' abusive conduct—not the state courts' judgments, which were merely ratifying the officials' conduct. *See Sung Cho*, 910 F.3d at 647. In contrast, in the case at bar, a state court presided over an entire foreclosure action, followed by motion practice and a number of appeals. *See supra* Section I.B. The state court did not merely ratify conduct, but it made independent rulings and concluded that a foreclosure judgment should properly enter against Plaintiff. Thus, even though Plaintiff includes a number of allegations that seek to portray this action in a manner that does not implicate the foreclosure action, her real harm *does* stem from the state court's judgment. *See, e.g.*, *Desir v. Fla. Capital Bank, N.A.*, 377 F. Supp. 3d 168, 172–73 (E.D.N.Y. 2019) (holding that plaintiff's suit, "which attacks a final judgment of foreclosure and sale previously rendered in state court, falls squarely within the bounds of *Rooker-Feldman*," notwithstanding the plaintiff's allegations that various companies were "third party debt collectors" in relation to the foreclosure action and that companies "recorded a fraudulent assignment of mortgage" on the property); *Limtung v. Thomas*, No. 19 Civ. 3646 (RRM) (SJB), 2019 WL 6253815, at *4 (E.D.N.Y. Nov. 21, 2019) (finding that plaintiff's "allegations of fraud – specifically that Wells Fargo never owned the mortgage and that he was not in default – invite this Court to review the state court's" judgment of foreclosure and sale, and ordering plaintiff to show cause why *Rooker-Feldman* did not bar claims).

This conclusion is further supported by Plaintiff's allegations, which demonstrate that Plaintiff *is* "argu[ing] that the state court[] committed an[] error," and that this action would "function as a *de facto* appeal." *Sung Cho*, 910 F.3d at 647.   For example, Plaintiff claims that she did not receive a "fair chance" to litigate the foreclosure in state court; that the state court judgment is actually "a nullity"; and, that the state court violated her due process rights, among other claims.   Am. Compl. at 2 ¶ 4; *id.* at 6 ¶ 15.   The Court concludes that, in the totality of circumstances, the second *Rooker-Feldman* factor is satisfied.[4]

With respect to the fourth factor, the judgment of strict foreclosure entered in state court on March 26, 2007, predates this action.   *See* State Court Docket at 3.

Lastly, with respect to the third factor, Plaintiff manifestly invites this Court to review the state court judgment.   For example, she claims that the "State of Connecticut has magnified the problem by having a severely inadequate court filing system," that "[t]he bars . . . against the federal courts meddling in State court affairs . . . has now been removed," and that Connecticut courts "ha[ve] proven inadequate to deal with the problems resulting from flawed record keeping." Am. Compl. at 12 ¶¶ 3–4.   Plaintiff also claims that "any decision by the State of Connecticut Superior Court . . . is a nullity."   *Id.* at 6 ¶ 15.   Accordingly, this lawsuit appears to satisfy the third factor of the *Rooker-Feldman* doctrine, as well.   As the Court explained in *Savvidis I*:

> [A]llowing Plaintiff to proceed with this action would require the Court to re-adjudicate issues already litigated and resolved in Connecticut Superior Court—for example, whether the Note and Mortgage are valid and enforceable, whether non-parties Athina and Anastasios Savvidis defaulted, and whether the Bank has standing to foreclose and is entitled to judgment of strict foreclosure (which would provide insight with respect to the validity of the state court

---

[4] Plaintiff's decision to bring a federal claim *after* the state court foreclosure judgment is further evidence that the real injury at the heart of this lawsuit flows from the state court judgment.   *Cf. CIT Bank, N.A. v. Jach*, No. 15 Civ. 5814 (KAM) (RLM), 2019 WL 1383850, at *5 (E.D.N.Y. Mar. 27, 2019) (concluding that the second *Rooker-Feldman* factor did not apply because "plaintiff [did] not appear to be complaining of injuries caused by the state court judgment" where "plaintiff commenced [the federal] action before the state court judgment issued").

> judgment, and, in turn, the propriety of Plaintiff's allegations
> regarding false recordkeeping).

*Savvidis*, 2020 WL 249027, at *5.

Plaintiff argues, nonetheless, that a "new law"—specifically, the United States Supreme Court's decision in *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019)—allows plaintiffs "to remove the State court's jurisdiction and proceed to federal Court." Am. Compl. at 6 ¶ 14. In *Knick*, the Supreme Court addressed whether a property owner is required to exhaust his or her state court remedies prior to bringing a Fifth Amendment takings claim in federal court under section 1983. *See Knick*, 139 S. Ct. at 2167–68. The court ruled in the negative, thus "eliminat[ing] the state-exhaustion requirement as an unjustifiable burden on takings plaintiffs." *Sagaponack Realty, LLC v. Vill. of Sagaponack*, 778 F. App'x 63, 64 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Knick*, 139 S. Ct. at 2167).

*Knick's* holding is not relevant to the case at bar. The Court is not dismissing Plaintiff's claim because she failed to exhaust her state court remedies—the Court is doing do because it lacks subject matter jurisdiction over this lawsuit. *Cf. Morabito v. New York*, 803 F. App'x 463, 468 (2d Cir. 2020), *as amended* (Feb. 27, 2020) (rejecting plaintiffs' argument that *Knick* barred the district court from applying collateral estoppel "because the district court did not dismiss their claims for failure to exhaust state remedies (as in *Knick*)," but rather "[t]he district court was required by federal law to apply collateral estoppel to issues decided in those proceedings").

Plaintiff's citation to *U.S. Bank Nat'l Ass'n v. Blowers*, 332 Conn. 656 (2019)—*see* Am. Compl. at 7 ¶ 16—does not alter the Court's analysis. In *Blowers*, the Connecticut Supreme Court decided whether "allegations that a mortgagee engaged in a pattern of misrepresentation and delay in postdefault loan modification negotiations before and after initiating a foreclosure action—thereby adding to the mortgagor's debt and frustrating the mortgagor's ability to avoid

foreclosure—can establish legally sufficient special defenses and counterclaims in that action." *Id*. at 658.   The court concluded that the defendant mortgagor's allegations of such conduct in that case "provide[d] a legally sufficient basis for special defenses in the foreclosure action."   *Id*. at 676.   *Blowers* is inapposite to the instant case because the Connecticut Supreme Court's analysis was confined to the narrow question of what circumstances would allow the defendant mortgagor to bring special defenses in a *state court* foreclosure proceeding; the mortgagor was not seeking to raise a claim, as a plaintiff, in a subsequent federal action.   Accordingly, *Blowers* has no implications for this Court's application of the *Rooker-Feldman* doctrine.

Therefore, upon review of the record, the *Rooker-Feldman* doctrine bars Plaintiff's action in this Court.   Accordingly, this Court lacks subject matter jurisdiction to resolve Plaintiff's requests for relief, and the Court "must dismiss the action."   Fed. R. Civ. P. 12(h)(3).[5]

**B.     Claim Preclusion**

To the extent that Plaintiff has alleged injuries from the same transaction but not directly caused by the foreclosure judgment—*e.g.*, that McQuaid had been recording false and misleading documents preceding the foreclosure, Am. Compl. at 1–2 ¶ 1, that "the loans for Comstock Hill A and B originated under a DBA, [and] notably loans by DBA's are prohibited and ineffective by case law in Connecticut," *id*. at 4–5 ¶ 12, or that "the loans for the properties must have involved title search and title insurance fraud," *id*. at 5 ¶ 13—those claims, among others in the Amended

---

[5] Because the Court lacks subject matter jurisdiction to preside over this case, the Court need not analyze Defendants' other arguments in support of dismissing Plaintiff's Amended Complaint—*e.g.*, that the Court should abstain from hearing this case, or that Plaintiff's claims are time-barred as a matter of law.   *See Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 518 (D. Conn. 2015) ("In the absence of subject matter jurisdiction, the Court need not decide whether the Complaint states any viable claims." (citation omitted)); *Guy v. Moynihan*, No. 17 Civ. 14 (SRU), 2017 WL 2661620, at *2 (D. Conn. June 20, 2017) ("Because I conclude that the *Rooker-Feldman* doctrine is sufficient to dispose of [plaintiff's] case in its entirety, I will address only that basis for dismissal.").   Nonetheless, the Court will analyze a few additional arguments *infra* to make clear that Plaintiff's Amended Complaint should be dismissed on other grounds as well.

Complaint, are subject to dismissal on the ground of claim preclusion.   *See Gonzalez v. Deutsche Bank Nat'l Tr. Co.*, 632 F. App'x 32, 34 (2d Cir. 2016).

Under the doctrine of claim preclusion, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."   *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107–08 (2d Cir. 2015) (citation and internal quotation marks omitted).   Additionally, "[t]he doctrine precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not."   *Id.*; *see also O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir. 2009) (stating that, under Connecticut law, "[c]laim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made" (internal quotation marks omitted)).

As the Court explained in *Savvidis I*, "[t]o the extent Plaintiff challenges the validity of the Mortgage, or any of its subsequent assignments, she could have raised such arguments in the state foreclosure action."   *Savvidis*, 2020 WL 249027, at *6.   I continued, noting that:

> Plaintiff had a full and fair opportunity to litigate her claims in *Bank Of New York as trustee for the Certificateholders v. Savvidis et al.*, FST-CV06-6000164-S (Conn. Super. Ct. 2006).   *See, e.g.*, *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 22 (2d Cir. 2016) (affirming the dismissal of a claim of alleged mortgage fraud on res judicata grounds because the plaintiff "had the opportunity to litigate that claim in her prior state court action").

*Id.*

Therefore, to the extent Plaintiff's claims are not barred by *Rooker-Feldman*, they must nevertheless be dismissed as precluded.

**C.      Additional Grounds for Dismissal**

Even if *Rooker-Feldman* and principles of claim preclusion did not apply to the case at bar, the Court would still dismiss Plaintiff's Amended Complaint against Defendants because: (1) CHL is not a state actor; and (2) Plaintiff has failed to allege that a municipal policy or custom caused her injury, for purposes of her claim against McQuaid.

**1.      State Action Requirement**

The Court turns first to CHL's additional argument that Plaintiff's claim against CHL should be dismissed because it is not a state actor.

As I have previously explained, "[s]ection 1983 does not itself confer substantive rights on a plaintiff, but is instead the means by which an injured party may seek vindication." *Youngs v. Fusaro*, 179 F. Supp. 3d 198, 204 (D. Conn. 2016). The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. As the plain text of the statute makes clear, "[a] plaintiff must establish that 'a person acting under color of state law deprived him of a federal right' to succeed on a § 1983 claim." *Youngs*, 179 F. Supp. 3d at 204 (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)).

Plaintiff has failed to make any allegations that CHL is a state actor for purposes of a section 1983 claim. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (citation and internal quotation marks omitted)). Additionally,

Plaintiff has failed to allege that CHL's actions, as a private party, constitute state action under section 1983.  *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 142–43 (D. Conn. 2018) (discussing the "three broad tests to determine whether a private party's actions constitute state action under § 1983").  Accordingly, Plaintiff's claim against Defendant CHL is DISMISSED.[6]

## 2. Municipal Policy or Custom

McQuaid also asserts that Plaintiff's section 1983 claim against him should be dismissed because Plaintiff has failed to allege that he acted in accordance with a municipal policy or custom.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that local governments are subject to suit under section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id*. at 690.  However, "municipalities may only be liable under § 1983 if their violation of the plaintiff's federal rights resulted from an official policy, custom, or practice of the municipal body."  *Fisk v. Letterman*, 501 F. Supp. 2d 505, 527 (S.D.N.Y. 2007) (citing *Monell*, 436 U.S. at 694).  As I have previously explained, "[a]bsent a policy or custom of inflicting such injury, a § 1983 claim may not proceed against a municipality."  *Komondy v. Gioco*, 253 F. Supp. 3d 430, 442 (D. Conn. 2017).

Here, Plaintiff has not brought this action against the City of Norwalk—she sued Defendant McQuaid in his official capacity.  *See* Am. Compl. at 1 ¶ 1 (alleging that "the Town Clerk of Norwalk[,] Connecticut" violated the Fifth Amendment); *id*. at 9 ¶ 26 (noting in the "parties" section of the Amended Complaint that the Defendant is "the Town Clerk of the City of Norwalk,

---

[6] On the other hand, Plaintiff alleges that McQuaid, the Town Clerk of Norwalk, violated Plaintiff's constitutional rights by "recording and maintaining false, misleading, and fraudulent records" with respect to Plaintiff's Property.  Am. Compl. at 1–2 ¶ 1.  Defendant McQuaid is a state actor, and he does not dispute that he was acting under the color of law while overseeing the Town's property records.  Accordingly, the Court assumes that this element of Plaintiff's section 1983 claim against McQuaid is satisfied, though as discussed herein, other grounds dictate the dismissal of Plaintiff's claim against McQuaid.

Connecticut, *through* its Town Clerk Richard McQuaid" (emphasis added)).   Nonetheless, as this

Court has previously noted:

> An official capacity suit is simply another way of pleading a claim
> against a municipality.   [*Monell*, 436 U.S. at 690 n.55].   It is
> treated in all respects as a suit against the municipality.   *Kentucky
> v. Graham*, 473 U.S. 159, 165–66 (1985).   Therefore, although
> plaintiffs have also pleaded their claims against [the defendant] in
> his official capacity, they would still need to prove that a policy or
> practice of [the city] caused the plaintiffs' injuries.

*Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 549–50 (D. Conn. 2006), *judgment entered*, 2006

WL 3332978 (D. Conn. Nov. 16, 2006), *and aff'd sub nom. Roe v. City of Waterbury*, 542 F.3d 31

(2d Cir. 2008).[7]

This Court has applied those principles in *Oxman v. Oxman*, No. 16 Civ. 1304 (DJS), 2017

WL 4078114 (D. Conn. Sept. 13, 2017), which Defendant McQuaid cites.   The plaintiff in that

case made allegations that are analogous to the case at bar, claiming that:

> Budkins, in her capacity as the Town Clerk for Greenwich,
> Connecticut, accepted and recorded a defective quitclaim deed
> concerning the property located at 9 Paddock Drive, Greenwich,
> Connecticut.   The plaintiff then asserts that she "lost her home and
> her personal property on a fully fraudulent Quitclaim Deed to 9
> Paddock Drive Greenwich Ct because of a failure to oversee the
> Town Clerk by the Town of Greenwich, Connecticut" and a
> "fail[ure] to train its employees."

*Id.* at *5 (citation omitted).

On the basis of those allegations, the Court dismissed the plaintiff's claim against the

municipality and against the defendant in her official capacity:

> The factual allegations pertaining to Budkins, *i.e.*, that she accepted
> and recorded a defective quitclaim deed, do not state a claim to relief

---

[7] Specifically, "[i]n order to prevail on a claim against a municipality under section 1983 based on acts of a public official . . . a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury."   *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 380 (D. Conn. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)).

> under Section 1983 that is plausible on its face.   Those facts would not permit the Court to draw the reasonable inference that Budkins violated a constitutional right held by the plaintiff, much less that there was a direct causal link between a municipal policy or custom and the alleged constitutional violation.   For this additional reason, the Section 1983 claim against Budkins is dismissed for lack of subject matter jurisdiction.

*Id.* (citation and internal quotation marks omitted).

The case at bar is similar.   Plaintiff alleges that Defendant McQuaid violated the Takings Clause of the Constitution "by recording and maintaining false, misleading, and fraudulent records from third parties" in connection with the Property.   Am. Compl. at 1–2 ¶ 1.   Plaintiff asserts that the recordings "originated . . . on or about April 14 of 2003 when the members of the Plaintiff's extended family were offered a loan through the lender that failed *ab initio* through a false title clearance."   *Id.* at 7 ¶ 18.   These meager allegations, similar to *Oxman*, do not state a claim for relief under section 1983 that is plausible on its face.   Nor does Plaintiff allege that McQuaid violated a municipal policy or custom of any kind.   Accordingly, Plaintiff's claim against McQuaid is DISMISSED for this additional reason.

## IV.   <u>CONCLUSION</u>

Although *pro se* litigants are provided special solicitude in the federal courts, and their complaints are to be read liberally, in the case at bar, "there is no indication" that Plaintiff "could establish subject matter jurisdiction by any lawful amendment."   *Nachbaur v. Weiss*, 19 F. App'x 24, 26 (2d Cir. 2001); *Guy*, 2017 WL 2661620, at *3 (dismissing the plaintiff's complaint without leave to replead because there was no indication that the plaintiff could establish subject matter jurisdiction after concluding that *Rooker-Feldman* barred the plaintiff's claims).   This is particularly the case because the Court already has provided Plaintiff with an opportunity to amend

after *Savvidis I.   See Savvidis*, 2020 WL 249027, at *7; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed . . . futility of amendment, etc.").

Accordingly, Plaintiff's Amended Complaint is DISMISSED without leave to replead. The Clerk is directed to close the file.

It is SO ORDERED.

Dated:          April 13, 2021
                New Haven, Connecticut


                                        *s/ Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge